# UNITED STATES DISTRICT COURT

FEB 15 2019

for the

Western District of Arkansas

DOUGLAS F. YOUNG, Clerk
By

Deputy Clerk

|  |  |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>SEVEN (7) CELLULAR TELEPHONES | )<br>)<br>)<br>)<br>)<br>) |

Case No. 5:19 CM __15__.

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachments A-1 through A-7

located in the _____ Western _____ District of ___ Arkansas, Fayetteville Div. ___ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. 841(a)(1) | Possession With Intent / Distribution of Controlled Substances |
| 21 U.S.C. 846 | Conspiracy |

The application is based on these facts:

See attached Affidavit of HSI SA Jeffrey Pryor.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending *date if more than 30 days:* _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

HSI SA Jeffrey Pryor

*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___2\15\19___

*Judge's signature*

City and state: Fayetteville, Arkansas

Hon. Erin L. Wiedemann, U.S. Magistrate Judge

*Printed name and title*

## ATTACHMENT A-1

The property to be searched is described as a silver cellular telephone unknown make/model with a cracked rear faceplate marked as item 14 by Springdale Police Department. The cellular telephone is currently in the possession of Homeland Security Investigations, located at: 3419 N. Plainview Avenue, Fayetteville, Arkansas. This warrant authorizes the forensic examination of the described and photographed cellular telephone for the purpose of locating the electronically stored information described in Attachment B.



## **ATTACHMENT A-2**

The property to be searched is described as a silver cellular telephone unknown make/model with a cracked rear faceplate marked as item 14 by Springdale Police Department. The cellular telephone is currently in the possession of Homeland Security Investigations, located at: 3419 N. Plainview Avenue, Fayetteville, Arkansas. This warrant authorizes the forensic examination of the described and photographed cellular telephone for the purpose of locating the electronically stored information described in Attachment B.



2

Case 5:19-cm-00015-ELW Document 1 Filed 02/15/19 Page 4 of 24 PageID #: 4

**ATTACHMENT A-3**

The property to be searched is described as a black Apple iPhone with minor damage to the front faceplate marked as item 16 by the Springdale Police Department. The cellular telephone is currently in the possession of Homeland Security Investigations, located at: 3419 N. Plainview Avenue, Fayetteville, Arkansas. This warrant authorizes the forensic examination of the described and photographed cellular telephone for the purpose of locating the electronically stored information described in Attachment B.




3

## **ATTACHMENT A-4**

The property to be searched is described as a white Apple iPhone marked as item 17 by the Springdale Police Department. The cellular telephone is currently in the possession of Homeland Security Investigations, located at: 3419 N. Plainview Avenue, Fayetteville, Arkansas. This warrant authorizes the forensic examination of the described and photographed cellular telephone for the purpose of locating the electronically stored information described in Attachment B.

 

## **ATTACHMENT A-5**

The property to be searched is described as a black LG Model LML212VL marked as item 18 by the Springdale Police Department. The cellular telephone is currently in the possession of Homeland Security Investigations, located at: 3419 N. Plainview Avenue, Fayetteville, Arkansas. This warrant authorizes the forensic examination of the described and photographed cellular telephone for the purpose of locating the electronically stored information described in Attachment B.

 

## ATTACHMENT A-6

The property to be searched is described as a purple Samsung cellular telephone displaying IMEI 359985090327536 marked as item 27 by the Springdale Police Department. The cellular telephone is currently in the possession of Homeland Security Investigations, located at: 3419 N. Plainview Avenue, Fayetteville, Arkansas. This warrant authorizes the forensic examination of the described and photographed cellular telephone for the purpose of locating the electronically stored information described in Attachment B.

 

## **ATTACHMENT A-7**

The property to be searched is described as a black Samsung cellular telephone marked as item 28 by the Springdale Police Department. The cellular telephone is currently in the possession of Homeland Security Investigations, located at: 3419 N. Plainview Avenue, Fayetteville, Arkansas. This warrant authorizes the forensic examination of the described and photographed cellular telephone for the purpose of locating the electronically stored information described in Attachment B.

 

## ATTACHMENT B

### *INFORMATION TO BE SEIZED BY THE GOVERNMENT*

All records and information on the device described in Attachment A that constitutes evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) and 846, including:

a. All internet browsing history, as well as telephonic, text, and electronic mail messages between Enrique RAMIREZ, Johnny VITAL, Neftali RODRIGUEZ-Sandoval, Enrique RAMIREZ, Jose TORRES-Delgado, Jose TORRES-Torres, Eileen HERNANDEZ and other persons, known and unknown, regarding the unlawful acquisition, disposition, and/or transfer of controlled substances or controlled substance analogues; information regarding the payment(s) for the controlled substances or controlled substance analogues; or the acquisition, transfer, or concealment of assets, money, or proceeds by any means;

b. All bank records, wire transfer records, bank statements, tax records, tax returns, financial records and notes, checks, credit card bills, account information, and other financial records;

c. Correspondence, notations, logs, receipts, journals, records, and other documents noting the price, quantity and/or times when controlled substances or controlled substance analogues were obtained and/or sold;

d. Any and all address books, telephone records, telephone books, date books, calendars, payment records, and telephone bills and documents and other items reflecting names, addresses, and telephone numbers;

e. Records, documents, and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items, obtained with the proceeds from the illegal sale of controlled substances or controlled substance analogues and related activities;

f. Records of off-site locations to store records or controlled substances, including safe deposit keys, records, receipts, rental agreements for storage facilities;

g. Mementos, including photographs, and other historical keepsake items which document the association of co-conspirators, with each other and other suspected associates involved in the illegal sale of controlled substances and controlled substance analogues and money launders as well property or assets purchased with illegal proceeds;

h. Lists of customers and related identifying information;

i. Types, amounts, and prices of controlled substances and controlled substance analogues trafficked, as well as dates, places, and amounts of specific transactions;

j. Text messages and other communications stored on the electronic devices relating to the trafficking of controlled substances and controlled substance analogues, money laundering, or identification of co-conspirators;

k. Any information related to the sources of drugs (including names, addresses, phone numbers, or any other identifying information);

l. Evidence of user attribution showing who used or owned the device at the time the things described in this warrant were created, edited, deleted, such as logs, phonebooks, photographs, saved usernames and passwords, documents, spreadsheets, and browsing history;

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

IN THE MATTER OF THE SEARCH OF
SEVEN (7) CELLULAR TELEPHONES     **Filed Under Seal**

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Jeffrey Pryor, Special Agent with the Homeland Security Investigations (HSI),

a component of the Department of Homeland Security, being first duly sworn, hereby

depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     This affidavit is being submitted in support of an application for a search

warrant for evidence believed to be contained in seven (7) cellular telephones,

collectively referred to hereinafter as the "**SUBJECT TELEPHONES**" and individually

identified as follows:  a silver unknown make / model cellular telephone with cracked

rear faceplate (Attachment A-1); a silver/teal Motorola cellular telephone with minor

damage to the front faceplate (Attachment A-2); a black Apple iPhone with minor

damage to the front faceplate (Attachment A-3); a white Apple iPhone (Attachment A-4);

a black LG Model LML212VL (Attachment A-5); a purple Samsung cellular telephone

displaying IMEI 359985090327536 (Attachment A-6); and a black Samsung cellular

telephone marked as item 28 by SPD (Attachment A-7). The **SUBJECT**

**TELEPHONES** are more fully described in Attachments A-1 through A-7, and the items

to be seized are described herein and in Attachment B.  Because this Affidavit is being

submitted for the limited purpose of establishing probable cause to search the **SUBJECT**

**TELEPHONES**, it does not include all of the information known to me as part of this

investigation, but only information sufficient to establish probable cause for the requested search warrant.

2.     I have been employed as a special agent (SA) with Homeland Security Investigations (HSI), a component of U.S. Immigration and Customs Enforcement since May 2007.  Prior to being employed as a special agent, I was employed as a Border Patrol agent with the United States Border Patrol from September 2001 until May 2007. As such, I am a law enforcement officer within the meaning of Section 115(c)(1) of Title 18 United States Code, who is authorized by law or Government agency to engage in or supervise the prevention, detection, investigation and/or prosecution of any violation of Federal criminal law, to include violations of Title 21, United States Codes, Sections 841(a)(1) and 846.

3.     In connection with my official duties, I investigate criminal violations of the Federal narcotics laws, including, but not limited to, Title 21, United States Code, Sections 841, 843, 846, and 848; money laundering laws, including Title 18, United States Code, Sections 1956 and 1957; and firearm laws, including Title 18, United States Code, Sections 922 and 924. I have also been involved in various types of electronic surveillance and in the debriefing of defendants, witnesses, informants, and others who have knowledge of narcotics trafficking. I have participated in investigations resulting in the arrest of numerous drug trafficking suspects and in the seizure of substantial quantities of illegal narcotics and proceeds of narcotics sales.

4.     Regarding the business of illegal narcotics trafficking, I am also aware of the following things based upon my training and experience:

i. That drug dealers very often place assets, including accounts at financial institutions, in names other than their own to avoid detection by government or other law enforcement agencies.

ii. That even though these assets are in other names, the drug dealers continue to use these assets and exercise dominion and control over them.

iii. That drug dealers frequently maintain on-hand amounts of United States currency in order to maintain and finance their ongoing illegal drug business.

iv. That drug dealers often maintain books, records, receipts, notes, ledgers, computers, computer disks, tickets, money orders, cashier's checks, wire transfer receipts, and similar drug related financial documents and records pertaining to the transportation, ordering, sale and distribution of illegal drugs. Furthermore, such documents are often written in code.

v. That drug dealers commonly front (provide illegal drugs on consignment) to their clients and often keep the aforementioned items so they can account for their drugs, the money owed for these drugs, and who has or owes for these drugs.

vi. That the aforementioned books, records, receipts, notes, ledgers, tickets, money orders, cashier's checks, and similar financial documents and records, including computers, computer disks, diskettes, and hard drives,

and other media are maintained where the drug dealers have ready access to them.

vii. That it is common for drug dealers to conceal contraband, large amounts of currency, precious metals, jewelry, address lists, telephone lists, proceeds of drug sales, and records of drug transactions in secure locations within their residences, yards, garages, offices, businesses, automobiles, safes, safe deposit boxes, and obscure locations known only to them, i.e., mail drops, mini storage warehouses, etc., for ready access and to conceal the same from law enforcement authorities.

viii. That persons involved in illegal drug trafficking conceal in their residences, yards, offices, businesses, safes, garages, storage buildings, vehicles, safe deposit boxes, and obscure locations, caches of drugs, large amounts of currency, weapons, financial instruments, precious metals, jewelry, and other items of value and/or proceeds from drug transactions and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of money made from engaging in illegal drug trafficking activities.

ix. That drug dealers often purchase expensive vehicles, businesses and residences with the proceeds from their drug transactions. Also, that drug dealers frequently change vehicles and register vehicles in other names to avoid detection by law enforcement personnel.

x. That drug dealers amass large proceeds from the sale of illegal drugs, they often attempt to legitimize their profits and maintain evidence of financial transactions relating to the obtaining, transferring, secreting or

spending of large sums of money derived from their illegal drug distribution activities.

xi. That to accomplish these goals, drug dealers utilize, including but not limited to, foreign and domestic banks and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations, business fronts, telephones, cellular telephones, facsimile machines, digital and various paging devices, and two-way radio systems. Furthermore, drug dealers frequently change telephone numbers, paging devices and telephone instruments.

xii. That drug dealers commonly maintain addresses and telephone numbers in books or papers which reflect names, alias names, addresses, and telephone numbers for their associates in their illegal drug trafficking.

xiii. That drug dealers take or cause to be taken photographs, video and

xiv. digital audiotapes of themselves, their associates, their property, and their illegal products. Furthermore, these drug dealers often maintain these photographs, video and audiotapes in their residences, offices, safes, garages, storage buildings, vehicles and safe deposit boxes.

xv. That drug dealers frequently keep paraphernalia for packaging, diluting,

xvi. weighing, and distributing the illegal drugs. Furthermore, this paraphernalia includes, but is not limited to, scales, plastic bags, diluting agents, boxes, trash compactors, heat sealers, and sealing tape.

xvii. That the courts have recognized that unexplained wealth is probative

xviii. evidence of crimes motivated by greed, and in particular, illegal trafficking in controlled substances.

xix. That drug traffickers very often possess firearms and other weapons for

xx. the purpose of protecting their drug trafficking enterprises from the efforts

xxi. of law enforcement authorities as well as from persons who might attempt to steal any drugs or money possessed by the drug traffickers.

xxii. Affiant is aware that drug traffickers often maintain extra residences as stash houses, meeting locations, and temporary housing for drug associates. Furthermore, these residences are frequently rented, purchased or titled in others' names even though the residences remain in the control of the drug traffickers.

xxiii. In the Affiant's experience as an investigator, it has been found that illegal drug trafficking is frequently a continuing activity over months and even years. Illegal drug traffickers typically will obtain and distribute controlled substances on a regular basis much as a distributor of a legitimate commodity would purchase stock for sale, and similarly, such drug traffickers will have an inventory which will fluctuate in size depending upon the demand for the product. The Affiant expects the drug trafficker to keep records of his illegal activities for a period extending beyond the time during which he actually possesses illegal controlled substances, in order that he can maintain contact with his criminal associates for future drug transactions, and so that he can have records of prior transactions for which he might still be owed money or

might owe someone else money. Drug traffickers frequently use third parties to transport shipments of illegal drugs and cash proceeds from the sale of illegal drugs. These third parties use a variety of methods to transport shipments of illegal drugs and cash, including automobiles.

5.     I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation, from discussions with other agents of HSI and other law enforcement officers. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another HSI agent or law enforcement officer. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated. In addition, this affidavit is based on information from the following sources:

      i.  Oral and written reports about this and other investigations which I have received from federal agents and local law enforcement;

     ii.  Physical surveillance conducted by federal agents and task force officers (TFO), or local law enforcement agencies, the details of which have been reported to me either directly or indirectly;

   iii.  A review of telephone toll records, and subscriber information;

   iv.  Public records;

    v.  A review of audio recordings resulting from consensually monitored meetings involving a reliable confidential informant and the target of the investigation;

   vi.  Information provided by reliable confidential informant; and

       vii.  My training and experience as a task force officer and the training and experience of other law enforcement officials, including other HSI special agents and task force officers.

6.     Based on the facts set forth in this affidavit, there is probable cause to believe that the property described in Attachment A-1 and Attachment A-2 has been used to commit violations of 21 U.S.C.§ 841(a)(1), and 846. There is also probable cause to believe that the items to be seized described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of additional individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

7.     In October 2018, Homeland Security Investigations (HSI), the Drug Enforcement Administration (DEA), the Rogers Police Department and the Springdale Police Department began investigating the drug trafficking activities of Jackson RODRIGUEZ-Robles (hereinafter "JACKSON"), Neftali RODRIGUEZ-Sandoval and (hereinafter "NEFTALI"), among others, in the Fayetteville Division of the Western District of Arkansas and beyond.

8.     On February 1, 2019, officers from the Springdale Police Department's (SPD) Narcotics Unit began conducting surveillance on a vehicle known to belong to NEFTALI at 608 Black Oak, Apartment 42, Springdale, Arkansas. While conducting surveillance, the officers noticed that a vehicle belonging to JACKSON was parked a few spaces from NEFTALI's vehicle. Significantly, NEFTALI informed SPD detectives approximately one week earlier that he sold JACKSON's vehicle to Enrique RAMIREZ (hereinafter "RAMIREZ"). It should be noted that NEFTALI, JACKSON and RAMIREZ are well-known to SPD officers as being gang members and involved in the

sale of illicit drugs, namely crystal methamphetamine.  The officers were also aware that Eileen HERNANDEZ (hereinafter "HERNANDEZ"), who is a known methamphetamine trafficker, resided at the 608 Black Oak, Apartment 42 address.

9.     At approximately 6:30 am, the officers observed five (5) males exit from Apartment 42.  The officers immediately identified NEFTALI and RAMIREZ by sight. The other three (3) males were later identified as Jose TORRES-Delgado (hereinafter "TORRES-Delgado"), Jose TORRES-Torres (hereinafter "TORRES-Torres") and Johnny VITAL (hereinafter "JOHNNY").   The officers observed RAMIREZ and JOHNNY walking to and entering the vehicle described as JACKSON's in the preceding paragraph.  RAMIREZ entered the driver's seat and JOHNNY entered the passenger's seat.  The other three (NEFTALI, TORRES-Delgado and TORRES-Torres) walked to and entered NEFTALI's vehicle.  NEFTALI was seated in the driver's seat, TORRES-Delgado was in the front passenger seat, and TORRES-Torres was in the back seat directly behind TORRES-Delgado.

10.     Upon observing the above described action, the officers attempted to make contact with RAMIREZ and JOHNNY, both of whom attempted to flee.  In his attempt to flee, RAMIREZ dropped his cellular telephone outside of the vehicle, while JOHNNY's cellular telephone was found on the ground where officers were able to apprehend him. Additionally, JOHNNY was in possession of approximately 14.1 grams of suspected crystal methamphetamine[1].  RAMIREZ was found in possession of a loaded Glock 17 pistol, three (3) baggies that contained an approximate total of 57.0 grams of suspected crystal methamphetamine.  RAMIREZ also was found in possession of approximately 1

---

[1] Springdale Police has submitted the all of the suspected crystal methamphetamine seized during this event to the Drug Enforcement Administration's laboratory for analysis.

gram of marijuana, twenty-three (23) alprazolam pills (commonly known as Xanax), a glass pipe commonly used to smoke crystal methamphetamine, and a counterfeit currency detector pen, among other items. RAMIREZ and JOHNNY were both arrested for violation of Arkansas drug and firearm statutes.

11.     After securing RAMIREZ and JOHNNY, the officers turned their attention to NEFTALI and those in his vehicle. Upon contacting NEFTALI's vehicle, the officers observed TORRES-Delgado stuffing an unknown item under the front passenger seat. TORRES-Delgado was removed from the vehicle and in doing so the officers located an extended magazine for Glock 21 pistol and a digital scale. After removing NEFTALI and TORRES-Torres from the vehicle, the officers located a Glock 21 pistol and a standard magazine for a Glock 21 under the front passenger seat. The officers reported that both magazines were loaded with .45 ACP bullets. TORRES-Delgado was also in possession of thirteen (13) counterfeit $100.00 bills. While searching the rest of NEFTALI's vehicle, the officers located two (2) baggies containing approximately 44 grams of suspected crystal methamphetamine between the front passenger seat backrest and the center console. NEFTALI, TORRES-Delgado and TORRES-Torres were arrested for violation of State of Arkansas drug and firearm statutes.

12.     The cellular telephones ("**SUBJECT TELEPHONES**") believed to have been possessed by RAMIREZ, JOHNNY, NEFTALI, TORRES-Delgado and TORRES-Torres were seized by the officers on scene. However, investigating SPD officers did not identify the owner/possessor of each of the **SUBJECT TELEPHONES**. Accordingly, your affiant has identified the five (5) cellular telephones collectively seized from RAMIREZ, JOHNNY, NEFTALI, TORRES-Delgado and TORRES-Torres as follows: Silver unknown make / model cellular telephone with cracked rear faceplate marked as

item 14 by SPD (Attachment A-1); silver/teal Motorola cellular telephone with minor damage to the front faceplate marked as item 15 by SPD (Attachment A-2); black Apple iPhone with minor damage to the front faceplate marked as item 16 by SPD (Attachment A-3); white Apple iPhone marked as item 17 by SPD (Attachment A-4); a black LG Model LML212VL marked as item 18 by SPD (Attachment A-5). Your affiant also submits that the digital forensic examination of the above described cellular telephones will assist with determining which cellular telephone belonged to which individual.

13.     Once the aforementioned individuals were arrested, the officers obtained a State of Arkansas search warrant for HERANDEZ's apartment (608 Black Oak, Apartment 42). The search of HERNANDEZ's apartment yielded approximately 17 grams of meth-in-solution and approximately 3.5 grams of suspected crystal methamphetamine. The officers also seized three (3) gummy bears that were believed to be laced with THC, other drug paraphernalia and two cellular telephones, namely a purple Samsung cellular telephone displaying IMEI 359985090327536 marked as item 27 by SPD (Attachment A-6) and a black Samsung cellular telephone marked as item 28 by SPD (Attachment A-7).

14.     The above described items, including the drugs, firearms, cellular telephones and paraphernalia, among other items, was seized by SPD. On Friday, February 8, 2019, the **SUBJECT TELEPHONES** (Attachment A-1 through A-7) were turned over to your affiant for storage pending authorization by the court to forensically examine the devices.

15.     Based on the foregoing, your affiant believes that probable cause exists to believe there is evidence of violation of Title 21 United States Code, § 841 (a)(1) and 846 located on the seven (7) cellular telephones identified in the preceding paragraphs and

more fully described in Attachments A-1 through A-7, which were seized from the possession of RAMIREZ, JOHNNY, NEFTALI, TORRES-Delgado, TORRES-Torres and HERNANDEZ, respectively.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

16.     It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

17.    Following the issuance of this warrant, I will collect the subject cellular telephones and subject them to analysis.  All forensic analysis of the data contained within the telephones and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

18.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

19.     Based upon the foregoing, including the information provided by the confidential source, the observations made by investigators, and the evidence collected, your Affiant believes that evidence, fruits, and instrumentalities of criminal activity in violation of Title 21 United States Code, Sections 841(a)(1) and 846 and Title 18 United States Code, Section 2, specifically those items detailed in Attachment B, currently exists on the property identified in Attachments A-1 through A-7.

Respectfully submitted,

Jeffrey Pryor
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on February 15/2019

Hon. Erin L. Wiedemann
United States Magistrate Judge